IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Branch Banking and Trust Company, | ) | C/A: 3:13-1318-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER FOR CONTEMPT |
| vs. | ) | AS TO CATHY G. LANIER |
| | ) | |
| Technology Solutions, Inc.; Cathy G. Lanier; and Randy D. Lanier, | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This mortgage foreclosure action was initiated by Branch Banking & Trust Company ("BB&T") against Technology Solutions, and two of its principals, Cathy G. Lanier and Randy D. Lanier. After a trial on the merits, the Court rejected all of the defenses advanced by the Defendants, finding them to be, for the most part, frivolous. The Court ordered the foreclosure and sale. (ECF No. 199). This Court's decision on the merits was ultimately upheld by the United States Court of Appeals for the Fourth Circuit.[1]

In accordance with this Court's order of April 7, 2014, the property was auctioned off to the highest bidder and the Plaintiff, BB&T, was the successful bidder. On September 30, 2014, this Court reviewed and approved the United States Marshal's Report of Sale of the properties at issue in this case. That Order also provided:

> Pursuant to page 14 of this Court's Decree of Foreclosure and Sale, Cathy G. Lanier and Randy D. Lanier or other persons in possession of the subject property shall immediately move from the mortgaged real estate and give up the mortgaged real estate without damage or vandalism . . . The marshal or duly authorized Deputy, or the Sheriff

---

[1] *See Branch Banking and Trust Company v. Cathy G. Lanier, et al*., ___ Fed. Appx. ___, 2014 WL 5462662, C.A.4 (S.C.), Oct. 29, 2014.

1

of the County where the property is located is also authorized to remove from the premises any furniture or other possession of Cathy G. Lanier or Randy D. Lanier, or other person in possession, and any interference with the activities of the Marshal or Deputy or Sheriff will be upon pain of contempt of court.

(ECF No. 232).

On October 10, 2014, counsel for the Plaintiff wrote to this Court and filed copies of letters written by Defendant Cathy G. Lanier to the United States Marshal and the Sheriffs of Lexington County and Chester County where the real estate is located. Those three letters from Ms. Lanier, containing essentially the same language, were designated "Extremely Urgent Matter!" The letters purported to ask the law enforcement agency's assistance

> "in preventing an illegal act that appears to be about to be committed against myself and my property I own in Lexington and Chester Counties . . . I am in foreclosure proceedings that are being vigorously fought as the bank is under investigation by federal fraud investigators for fraudulent acts related to this loan (see attached letter). Regardless of the investigation, the bank has, with the collusion of the court, moved forward to take the property."

The letters continue

> "I wanted to inform you that you would be assisting an illegal act if you are to assist [the bank] in any way. It is my belief that he is pushing this rapidly due to the fraud investigation so that he can perhaps tie up the property even after the fraud is uncovered."

(ECF No. 235, Exhibit #7)

Attached to Ms. Lanier's letters were other letters, each dated October 8, 2014, purportedly written on the letterhead of Colleoni Enterprises, Castaic, California, and purportedly signed by Roberto Colleoni, who was represented in the letter to be a "Federal Mortgage Fraud Investigator."[2]

---

[2] Interestingly, an individual by the same name of Roberto Colleoni is listed as the manager of "Mortgage Investor Fraud Damage, LLC," a Florida Domestic Limited Liability Company which was incorporated on August 11, 2014, in Cape Coral, Florida. The registered agent is listed as Regis Sauger, Sr.

2

The letters advised the United States Marshal and the Sheriffs that "Colleoni Group is presently conducting a Federal Mortgage Fraud Audit on the above mentioned loan." (ECF No. 235-7 at 4).

Acting upon the information provided by Plaintiff's counsel on October 10, 2014, this Court issued its Order and Rule to Show Cause directing the Defendants to appear and show cause why they should not be held in contempt for violation of this Court's September 30, 2014, Order which directed them to peacefully surrender possession of the properties. (ECF No. 236). The Order also directed Roberto Colleoni to appear at the hearing. Prior to hearing, however, the Court granted Mr. Colleoni, who apparently resides in California, permission to appear by telephone. His counsel was present at the hearing.

The Defendants appeared as directed on October 30, 2014, and Mr. Colleoni was present by telephone.[3] Mr. Colleoni, under oath, informed the Court that his company was not in the business of investigating banks for fraud. When asked what his company did, Mr. Colleoni replied that "basically it's a type of a settlement or modification nature modification we request some documents if there's a valid on the mortgage if there's anything that has been missing or there's a possibility of a settlement or modification, but under no circumstances I'm not in a position to direct federal investigation on BB&T company or bank." (Tn. of Oct. 30, 2014 Hearing at 10).

Mr. Colleoni also indicated that the letter purportedly sent by his company, Colleoni Enterprises, was not written on his company's traditional letterhead and that the signature purporting to be his was not authentic. He indicated his belief that a former employee of his company, Robert

---

In addition, Mr. Colleoni's Linkedin website profile provides as his summary "Years of working at a financial institution as a mortgage loan fraud investigator, credit analyst, and real estate investments."

[3] The Defendants, as well as Colleoni, were presented by counsel at both the October 30, 2014, hearing and the November 6, 2014, hearing.

3

Carlieo, was the individual who had dealt with Mrs. Lanier and had authored the letter. Mr. Colleoni indicated that Mr. Carlieo had terminated his relationship with Colleoni Enterprises three months earlier and indicated that he did not know of Mr. Carlieo's whereabouts.[4]

When pressed, Mrs. Lanier admitted that most of her dealings with Colleoni Enterprises were done through Robert Carlieo and indicated that she had "numerous emails" with Mr. Carlieo. (Id. at 13). Further, when asked why Mrs. Lanier had written the letters to the U.S. Marshal and Sheriff's Offices, counsel attempted to justify Mrs. Lanier's actions by stating that the letters were written on the same day Mrs. Lanier's dog died.

Turning to the question of the condition of the premises at issue in this litigation, Plaintiff's counsel informed the Court that none of the buildings on the subject property was the principle residence of the Lanier's, but that there were numerous items of personal belongings stored in the buildings on both tracts of land. Counsel indicated that he had requested the Lanier's remove the personal property from the buildings, to no avail.

When questioned, Ms. Lanier indicated that she had contacted an auctioneer to look into the possibility of having the items auctioned off, but it would be eight or nine weeks, at a minimum, before any auction company could attend to the matter.

After hearing from the parties, the Court indicated that it would allow the Defendants until 5:00 p.m. on Thursday, November 13, 2014, by which to remove all personal belongings from the subject properties. The Court indicated that any personal belongings left on the properties after 5:00 p.m. on November 13, 2014, would be deemed forfeited to BB&T, title would vest in BB&T, and

---

[4] In correspondence sent to the Court after the hearing, Mr. Colleoni indicated via his attorney, "Mr. Carlieo was employed as a commissioned sales person from April 2014, through September 25, 2014." (ECF No. 254). Accordingly, the fraudulent letter sent by Mr. Carlieo to Mrs. Lanier was purportedly sent after Mr. Carlieo was no longer employed with Colleoni Enterprises.

BB&T would be authorized to dispose of the property in any way it saw fit.

With both Mrs. Lanier and Mr. Colleoni placing the blame on Robert Carlieo for the apparently fraudulent letters from Colleoni Enterprises, the Court adjourned the hearing and requested that the parties reappear one week later, on November 6, 2014. The Court instructed Ms. Lanier to provide to the Court copies of her "numerous" emails with Robert Carlieo. The Court also directed Mr. Colleoni to provide, through counsel, all of his contact information for Mr. Robert Carlieo.

At the November 6, 2014, hearing, Ms. Lanier produced but one email. That email contained a purported email address for Robert Carlieo which proved to be an incorrect, non-existent address.[5] In like manner, Mr. Colleoni provided, through counsel, one document purporting to be information regarding Robert Carlieo, and although the email address was different from that provided by Ms. Lanier, efforts to reach Mr. Carlieo at the email address given were unsuccessful as well. The Court attempted to telephone Mr. Carlieo at the phone number provided by Mr. Colleoni, however, only an answering machine was reached.

At the November 6, 2014 hearing, Ms. Lanier was placed under oath and then questioned about her relationship with Mr. Colleoni and Mr. Carlieo. She indicated that she had met Mr. Colleoni in Florida and paid him $3,500 to assist her in preventing her properties from being sold at foreclosure. She indicated that she thought this was a legitimate "federal fraud investigation." This assertion, of course, is belied by the testimony of Mr. Colleoni that his company did not do such federal fraud investigations.

---

[5] Efforts to email a communication to Robert Carlieo resulted in a "delivery failure report" that stated, "the email account you tried to reach does not exist." Both email addresses provided by Mrs. Lanier and Mr. Colleoni were gmail addresses, not addresses directly associated with Colleoni Enterprises.

5

Ms. Lanier testified that on October 8, 2014, she spoke with Mr. Carlieo on the phone. At that time she asked him if he could provide her something in writing about the work being performed for her. According to Mrs. Lanier, Mr. Carlieo indicated he would send her the company's "standard letter." Mr. Carlieo then emailed the apparently fraudulent letter to Mrs. Lanier as a Word document so she could fill in the pertinent information. Mrs. Lanier testified the signature was already affixed to the document when it was sent to her, and she only added the addresses of the parties to whom the letter was to be sent.

At the conclusion of the hearing, the Court announced that its previous Order requiring the Defendants to remove all personal property by November 13 remained in force[6]; found Defendant Cathy G. Lanier in contempt of this Court for willfully violating the Court's order to peacefully surrender possession of the properties; and indicated that sanctions would be awarded against Ms. Lanier. This Order serves to memorialize the Court's rulings.

Having made the foregoing factual determinations, the Court concludes that Cathy G. Lanier is in contempt of this Court for willfully violating this Court's September 30, 2014, order to peacefully surrender the foreclosed properties. The Court finds that she engaged in a deliberate and deceitful attempt to forestall the rightful owner possession of the properties by fraudulently representing to the United States Marshal and to the Sheriffs of Lexington and Chester Counties, that a "federal fraud investigation" was ongoing regarding Branch Banking and Trust Company, when in fact, as Ms. Lanier well knew, no such fraud investigation was being conducted. The Court views

---

[6] The Court takes this opportunity to reiterate that any personal items left on the property after 5:00 p.m. on November 13, 2014, shall be deemed forfeited by the Defendants. At such time, title shall vest in the Plaintiff, and Plaintiff will be authorized to dispose of the property via any means it chooses. All individuals and/or companies conducting the removal, sale, or disposal of the property shall be fully exonerated from any and all claims made by the Defendants that the removal was unlawful or improper in any way.

Mrs. Lanier's obstructionist actions as another attempt to undermine the Court's authority by refusing to comply with its Orders and directives.

As for the sanctions to be imposed, the Court gave serious consideration to incarceration of Ms. Lanier for her contempt. Ultimately, however, the Court determined that the most appropriate sanction would be to require Ms. Lanier to reimburse the Plaintiff its reasonable attorney fees expended in bringing the motion and sending its counsel to the two hearings referenced herein. To that end, counsel for the Plaintiff, Mr. Steven Licatta, was directed to furnish to the Court an itemization of the time expended on this matter from September 30, 2014, forward, and an indication of his hourly fee for work performed for his client, BB&T.

The Court has received and reviewed the submissions and finds the number of hours and the hourly rate to be fair, just, and reasonable. (ECF No. 257). Multiplying the number of hours 22.85, times the hourly fee of $265.00, arrives at a total attorney fee of $ 6,055.25. Cathy G. Lanier is directed to immediately pay this sum to Mr. Licatta and the Court's sanction award shall be entered on the judgment roll of this Court, so as to create a lien against any property owned by Ms. Lanier.

Finally, the Court fines Ms. Lanier the sum of $500 for her willful violation of this Court's Order. The sum shall be paid to the Clerk of this Court immediately. The fine ordered herein shall also be entered as a judgment against Ms. Lanier.

The Clerk is directed to forward a copy of this order to the United States Marshal for the District of South Carolina and the Sheriffs of Lexington County and Chester County, South Carolina.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

November 10, 2014  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge