IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Branch Banking and Trust Company, ) | C/A: 3:13-cv-1318-JFA |
| ) | |
| Plaintiff, ) | |
| ) | ORDER |
| vs. ) | |
| ) | |
| Technology Solutions, Inc.; Cathy G. ) | |
| Lanier; and Randy D. Lanier, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This mortgage foreclosure action was initiated by Branch Banking & Trust Company ("BB&T") against Technology Solutions, and two of its principals, Cathy G. Lanier and Randy D. Lanier. After a trial on the merits, the Court rejected all of the defenses advanced by the Defendants, finding them to be, for the most part, frivolous. The Court ordered the foreclosure and sale of the property. (ECF No. 199). This Court's decision on the merits was ultimately upheld by the United States Court of Appeals for the Fourth Circuit.[1] Additionally, supplementary proceedings were conducted by this Court that culminated in an Order holding Defendant Cathy G. Lanier in contempt for violating this Court's previous Order to peacefully surrender possession of the subject premises to the Plaintiff, BB&T, who was the

---

[1] *See Branch Banking and Trust Company v. Cathy G. Lanier, et al.*, ___ Fed. Appx. ___, 2014 WL 5462662, C.A.4 (S.C.), Oct. 29, 2014.

1

successful bidder at the foreclosure sale.

Now before the Court is a motion filed by Defendant Randy D. Lanier, purportedly on behalf of "all named Defendants"[2] to reconsider, vacate the judgment, and reverse the foreclosure sale in this action. The motion also seeks a temporary restraining order prohibiting the Plaintiff from occupying the premises it purchased at the foreclosure sale.

After reviewing the submissions of the parties, the Court has determined that oral argument would not aid in the decisional process and that the motion should be denied forthwith.

Central to the motion presently before the Court is the contention by the Defendants that "newly discovered evidence" proves the Defendants' allegations that BB&T had removed the subject real estate from the lien of the mortgage during one of the loan modifications that occurred subsequent to the initial mortgage.

Before delving into the merits of the motion, the Court believes a review of Defendants' assertion that this document is "newly discovered," bears scrutiny, especially in light of the Defendants' previous conduct in this litigation.

Defendants point to a loan modification document, with an accompanying security agreement, executed on February 23, 2005. Defendants initially contended

---

[2] This Court has repeatedly advised the Laniers that, as non-attorneys, they may not represent the corporate defendant. *See* S.C. Code Ann. § 40-5-310.

that this document was not in the discovery provided by the Plaintiff during the discovery phase of this case, and that the Defendants only recently learned of its existence by personally reviewing their own copies of the loan documents provided by the Plaintiff during the loan process. (ECF No. 267). Defendants contended that this document was on their computer which, unfortunately, crashed and only recently were they able to restore the document to their computer and print out a copy. (Id.).

Plaintiff's counsel responded with a copy of the specific document in question, which bears Bates numbers in the lower right corner verifying that it was one of a series of document produced to the Defendants in this action. (ECF No. 269). The Defendants have not come forth with any explanation as to why the alleged computer crash could not have been rectified earlier in this case, which commenced on May 15, 2013. Further, and even more troubling to the Court, Defendants' in their Reply, admit that the document *was* in fact produced to them during discovery, but that the document was "intentionally placed as a needle in a haystack." (ECF No. 270). Defendants further assert that the document was intentionally suppressed at trial and that Plaintiff has "manipulated this proceeding." (Id.).

Cast in the backdrop of these new allegations is Defendants' conduct during the evidentiary hearing, which looms large in this case and bears mention at this point. During the bench trial, Defendants contended that the mortgage being

3

foreclosed upon did not in fact belong to the Plaintiff, BB&T, but instead belonged to some unknown third party, to whom the mortgage allegedly had been assigned.

Defendants produced a witness who testified that he was aware that the mortgage had been assigned, and when pressed by this Court to state the basis for his testimony, he indicated that he had learned in through his subscription to a Bloomberg financial news subscription service, and that to reveal this information in court would violate "the copyright laws of the United States." Accordingly, the witness provided no basis for his testimony and it was properly rejected by this Court.

Secondly, when the Plaintiff introduced the original Note and Mortgage still in its possession at the evidentiary hearing, the Defendants— after requesting and receiving a magnifying glass from this Court—announced that the documents were not genuine originals, but were instead color copies, thereby lending credence to their argument that the original note and mortgage had been assigned. At the Defendants' request, the Court continued the trial for a second day, so as to allow the Defendants to call a document forensics expert from Spartanburg, South Carolina, to come review the disputed documents and express an opinion thereon. The expert, who had not theretofore seen the documents in question, arrived at the courthouse on the second day, microsope in hand, and, after examining the documents, confidently announced that they were, in fact, genuine originals.

Faced with this history and the Defendants' own admission that the document was in fact produced by Plaintiff, the Court is loath to give credence to the Defendants' argument that the documents now before it are "newly discovered." To do so would impugn the integrity of Plaintiff's counsel who, at all times during this litigation, has been straightforward with this Court.[3] Further, the Court is not inclined to entertain any suggestion that Plaintiff intentionally withheld or attempted to suppress the document from the proceedings. Had Defendants thoroughly reviewed the documents produced by Plaintiff, they would have found the purported "newly discovered" document, and could have presented it to the Court for consideration. Defendants' attempt to cast blame on Plaintiff for their own oversight is unwarranted and improper.[4]

---

[3] Defendants' attempt the impugn the integrity of Plaintiff's counsel is consistent with other actions taken by the Defendants in this case. As noted in detail in this Court's Order of November 10, 2014 (ECF No. 258), Defendants willfully interfered with the foreclosure process and violated a clear Order of this Court by writing to the United States Marshal and to the Sheriffs of Lexington and Chester Counties, suggesting that the Plaintiff in this action, BB&T, was under investigation for "federal mortgage fraud." The evidentiary hearing that followed this accusation revealed that in fact, no federal mortgage fraud investigation was ongoing, but that Defendants had purchased a letter from a private company for $3,500 incorrectly stating that such an investigation was in progress. For this violation of the Court's Order, the Court found Cathy Lanier in contempt and sanctioned her appropriately.

[4] During the course of the litigation, Defendants have impugned the credibility of both the Plaintiff, BB&T, by falsely stating that it was under a federal fraud investigation, and its attorney, Steve Licata, by falsely suggesting that he did not provide all discovery requested. The Court has found both of these claims to be meritless. The Defendants have also impugned the integrity of the Court by suggesting, in their letter to the United States Marshal and Lexington and Chester County Sheriffs, that this Court was "in collusion" with the Plaintiff. When offered the opportunity at the evidentiary hearing to present any evidence of collusion, Defendants through counsel, withdrew this allegation. Defendants are hereby admonished that any future allegations of legal or ethical improprieties will be carefully scrutinized, and if a repeat offense is found, the Court will not hesitate to impose further sanctions.

Even if the Court were to address the merits of the motion presently before it, the Court has little difficulty denying the present motion without an evidentiary hearing.

The question of loan modification was highly debated at the evidentiary bench trial. The Defendants contended that some of the loan modifications executed between the parties somehow deprived the Plaintiff of its ability to foreclose on the mortgage upon a clear showing of default by the Defendants. However, the "Note Modification Agreement" produced by Plaintiff as Bates Numbers 17179 through 17128 merely reflects the *addition* of collateral, rather than the *removal* of collateral. (ECF No. 269).

The original Promissory Note in this case was dated December 9, 2004, and matured and was payable on March 25, 2005. The Note was secured by the mortgages which are the subject of this litigation and as to which this Court has ordered foreclosure.

On February 23, 2005, as the March 25, 2005, maturity date approached, a Note Modificaiton Agreement was executed. That document provided, in part, as follows: "Borrowers and Bank agree that said Promissory Note be modified only to the limited extent as is hereafter set forth; that all other terms, conditions, and covenants of said Promissory Note remain in full force and effect." (Id.). The Loan

Modification Agreement then modified the maturity date to extend it for another three years to February 25, 2008. The loan documents then provided for the addition of a Security Agreement, dated February 23, 2005, adding more collateral . Significantly, the portion of the Note Modification Agreement which reads "the collateral hereafter described shall be and is hereby deleted as security interest for payment of the aforesaid Promissory Note", is followed by two lines which are conspicuously blank. (Id.). The failure to indicate any released property in the blank is clear evidence that the parties did not, in fact, agree to remove/release the real estate, which since has been foreclosed in this action, from the mortgage as the Defendants contend.

Moreover, the Note Modification Agreement further states that "except for the modifications contained herein, [the Promissory Note and other loan documents] shall remain in full force and effect." (Id.). The document further provides "unless otherwise provided herein, it is expressly understood and agreed . . . that any and all collateral (including but not limited to real property, personal property, fixtures, inventory, accounts, instruments, general intangibles . . . ) given as security to insure faithful performance by borrowers . . . *shall remain as security for the Promissory Note as modified hereby*." (Id.).

Thus, the Defendants argument that the Loan Modification Agreement somehow served to release the subject real estate from the mortgage is clearly

7

8

baseless. As indicated above, the relevant documents specifically provide that all collateral placed under lien initially remained so throughhout the Note modificaiton process.

Accordingly, the motion to reconsider and for a temporary restraining order is denied.

IT IS SO ORDERED.

November 14, 2014　　　　　　　　　　　Joseph F. Anderson, Jr.
Columbia, South Carolina　　　　　　　　United States District Judge